PEOPLE v HOLMES

Docket No. 60883. Submitted June 14, 1983, at Lansing.—Decided
March 20, 1984.

Michael W. Holmes was convicted of two counts of armed rob-
bery, one count of felony-firearm, and one count of assault with
intent to commit murder, Oakland Circuit Court, Richard D.
Kuhn, J. The defendant appealed, alleging that (1) the trial
court erred in failing to exclude evidence of his prior conviction
for armed robbery and failing to articulate on the record the
factors that it considered in making its determination, (2) the
pretrial line-up was constitutionally defective, and (3) the trial
judge erred in his instructions to the jury after it had deliber-
ated one-half day without reaching a verdict and reported a
deadlock. *Held:*

1. The trial court did not abuse its discretion by failing to
suppress evidence of the defendant's prior conviction for armed
robbery. The court weighed the appropriate factors in deter-
mining whether to admit such evidence. The trial court con-
cluded that the probative value of the evidence outweighed any
prejudicial effect.

2. The pretrial line-up was not constitutionally defective. The
discrepancies in height and weight among the participants in
the line-up were not unduly suggestive. The in-court identifica-
tion of the defendant had an independent basis.

3. The trial judge did not err in instructing the deadlocked
jury. The instruction did not substantially deviate from the
ABA standard jury instruction for a deadlocked jury.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 6] 29 Am Jur 2d, Evidence § 327.
[1] 30 Am Jur 2d, Evidence § 1175.
[4] 5 Am Jur 2d, Appeal and Error § 889.
    29 Am Jur 2d, Evidence § 320 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error §§ 772-775.
[7, 11] 29 Am Jur 2d, Evidence § 371.4.
[8] 29 Am Jur 2d, Evidence § 371.
[9] 21 Am Jur 2d, Criminal Law § 303.
    76 Am Jur 2d, Trial §§ 1054 *et seq.,* 1069, 1109.
[10] 5 Am Jur 2d, Appeal and Error §§ 772, 774.

M. J. KELLY, P.J., concurred separately. He believed that a reviewing court should engage in an in-depth analysis of the record on appeal when a question of a lower court's abuse of discretion is properly framed. Here, he believed that the trial court exercised its discretion in a reasonable manner. He also believed that the line-up was not impaired by the presence of one person taller than the others.

## OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS.

   A trial court has discretion in admitting evidence of a criminal defendant's prior convictions for impeachment purposes; that discretion requires the trial court to balance the probative value of the evidence of the prior convictions against the prejudicial effect such evidence would have on the defendant.

2. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS.

   The factors a trial court must weigh in deciding whether or not to allow impeachment of a defendant in a criminal case by evidence of prior convictions are: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?); (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a "bad man" or assume that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?); and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?); a trial court abuses its discretion when it fails to consider these factors in deciding to allow evidence of prior convictions.

3. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS.

   Two of the purposes for a trial judge's inquiry in determining whether evidence of a criminal defendant's prior convictions should be admitted for impeachment purposes are (1) to put before the jury only those prior convictions indicative of the defendant's disposition toward truthfulness and veracity, and (2) to keep from the jury those convictions which, although

they may be indicative of the defendant's disposition toward truthfulness, may interfere with the jury's ability to determine the defendant's guilt or innocence on the basis of the evidence.

4. APPEAL — CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS.

Review of a trial court's determination to admit evidence of prior convictions for impeachment purposes involves a consideration of: (1) whether the trial court recognized its discretion to decline to admit the evidence of the convictions, and (2) whether the trial court's decision was so palpably and grossly violative of fact and logic as to amount to an abuse of discretion.

5. APPEAL — ABUSE OF DISCRETION.

An abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts, the term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations; in order to have an abuse in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

6. EVIDENCE — CRIMINAL LAW — PRIOR CONVICTIONS — IMPEACHMENT.

Similarity between a prior conviction and a charged crime does not, per se, bar the use of evidence of the prior conviction for impeachment purposes.

7. CRIMINAL LAW — LINE-UPS.

Discrepancies in the height and weight of the participants in a line-up do not necessarily make the line-up constitutionally defective.

8. CRIMINAL LAW — IN-COURT IDENTIFICATION.

The factors supporting an independent basis for an in-court identification of a defendant by a witness when a pretrial identification has been rendered invalid must be totally unrelated to any pretrial confrontation.

9. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES — APPEAL.

A trial court in a criminal case, where confronted with a deadlocked jury, should instruct the jury: that in order to return a verdict, each juror must agree thereto, that jurors have a duty to consult with one another and to deliberate with a view to

reaching an agreement if it can be done without violence to individual judgment, that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors, that in the course of deliberations a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous, and that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict; any substantial departure therefrom constitutes error and is grounds for reversal on appeal.

CONCURRENCE BY M. J. KELLY, P.J.

10. APPEAL — ABUSE OF DISCRETION.
    *A reviewing court should engage in an in-depth analysis of the record on appeal when a question of a lower court's abuse of discretion is properly framed; the reviewing court should give full-fledged review to discretionary decisions by carefully weighing the various rights and considerations involved in each type of discretionary decision.*

11. CRIMINAL LAW — LINE-UPS.
    *Physical differences between a suspect and other line-up participants do not in and of themselves constitute impermissible suggestiveness.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people.

*Keller & Avadenka, P.C.* (by *Frances R. Avadenka),* for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

R. I. COOPER, J. Defendant was convicted of two counts of armed robbery, MCL 750.529; MSA 28.797, one count of felony-firearm, MCL

---

* Circuit judge, sitting on the Court of Appeals by assignment.

750.227(b); MSA 28.424(2), and one count of assault with intent to commit murder, MCL 750.83; MSA 28.278, by a jury on July 2, 1981. Trial had commenced on June 18, 1981. Defendant was sentenced to 13 to 30 years imprisonment on the robbery and assault charges to run concurrently and 2 years on the felony-firearm charge.

Witness Steven Arthur Hammerstrom testified that he and his date, Teresa Zeitz, stopped at a gas station shortly after midnight on Thanksgiving night, November 28, 1980, after leaving a local bar where he had three or four beers. After entering the gas station's rest room, he heard someone else enter and turned to see a small caliber revolver pointed at his chest. The intruder told him to empty his pockets and face the wall. Witness Hammerstrom took brief looks at the intruder over the course of approximately 30 seconds. According to Mr. Hammerstrom, while emptying his pockets which included approximately $100, he was facing the intruder. As the intruder left, he told Mr. Hammerstrom not to leave for 15 minutes or he would be blown away. However, Mr. Hammerstrom heard a car horn beeping and looked out of the bathroom door to see the same man leaning into the open driver's door of his girl friend's car and hitting Ms. Zeitz with a pistol. Mr. Hammerstrom yelled at the assailant and the assailant fired two gunshots at Mr. Hammerstrom. Ms. Zeitz continued to struggle with the assailant by hanging onto her purse. However, she released the purse when the assailant again pointed the gun at Mr. Hammerstrom and fired a third shot. After obtaining the purse, the assailant ran behind the gas station and Mr. Hammerstrom ran around the front of the station in pursuit. The assailant fired a fourth shot at Mr. Hammerstrom before jumping

into a waiting car driven by an unidentified person. Mr. Hammerstrom, who is color blind, described the assailant as a black male, medium complected, with a heavy build, approximately 5′ 10″ or 5′ 11″ in height, 20 to 25 years old, heavier than 160 pounds and with no mustache. Approximately one month after the incident, Mr. Hammerstrom viewed a line-up but did not make a positive identification of the defendant as the assailant. However, he did state that the defendant "looked like" his assailant. At the trial, Mr. Hammerstrom was unable to identify the defendant as the assailant.

Witness Teresa Zeitz testified that the lighting at the gas station was very bright. She observed a man pass within four to six feet of her with his face turned towards her. The man went into the same rest room that Mr. Hammerstrom had entered and closed the door. About a minute later the man came out of the rest room, approached her car, and opened the car door. He put a gun to her side and said, "give me your purse". Witness Zeitz tried to pull her purse away and honked the car horn. The assailant hit her over the head with the gun approximately three times. At that point, Mr. Hammerstrom came out of the men's room and yelled at the assailant. After the assailant shot at Mr. Hammerstrom, he fled with Mr. Hammerstrom in pursuit. Ms. Zeitz ran to the gas station window to ask the woman attendant to call the police. At the trial, witness Zeitz identified defendant Michael Holmes as her assailant. Ms. Zeitz also testified that she and Mr. Hammerstrom had been at a local bar for three or four hours and that she had consumed three or four beers. She testified that the area over the gas pumps was well lit with fluorescent lights, but that the side of the

building where the rest rooms were located was somewhat darker, although there was lighting under the roof overhang. Ms. Zeitz attended the line-up which contained five suspects and, after approximately two minutes, identified defendant Holmes as the assailant. Her trial testimony showed that she observed the defendant to be the heaviest person in the line-up and also the tallest person, with one exception. When asked by the defense attorney whether the defendant "stuck out like a sore thumb", she replied, "to me he did".

Witness Audrey Nance was the cashier at the gas station on the night of the incident. She testified that she looked out of the window when she heard a car horn blow. She observed a heavy-set black male, wearing a dark jacket and dark ski cap and standing by the open door of the Zeitz car. She was about 20 to 23 feet away and testified at the trial "as God is my witness, that is the man", when asked to identify the defendant at the trial. However, at the line-up she did not make a positive identification for the reason that she thought the defendant's nose was a little bit wider than it showed in a composite drawing and that, at the time of the incident, she was quite a distance away and the light was not very bright. However, at trial, she stated that, if she had seen the assailant again on the night of the incident, she could have identified him.

Detective Ronald Morgan testified that Mr. Hammerstrom and Ms. Zeitz had done separate composites. The defendant was arrested on December 12, 1980, approximately one week after Detective Morgan received the composites, and the line-up was held on December 30, 1980, over one month after the incident. Initially, Detective Morgan testified that the line-up was not one of the

best line-ups he had ever conducted. However, he later testified on redirect examination that it was a very good line-up. Witness Morgan testified that the goal of a line-up is to get everyone to look as much alike as possible. On cross-examination, he testified that the inclusion of one of the five persons in the line-up was improper due to the disparity in size between that person and the defendant. Also he testified that the remaining three suspects were too small to be in the line-up with the defendant. During the line-up, the defendant's first attorney objected to the line-up and departed, although the record is not clear as to his specific reason for departing. A second attorney, who did not object to the line-up, was provided. At the trial, the court denied defendant's motion to dismiss defendant's pretrial line-up and subsequent in-court identification. The trial court also denied both of defendant's motions to suppress evidence of his prior armed robbery conviction. During deliberation, the jury informed the court that it could not agree on a verdict. The jury had been deliberating part of the morning and most of the afternoon. The court encouraged the jury to try again, and within a few minutes after resuming deliberation, the jury returned with a unanimous verdict of guilty.

The defendant did not testify and gave his reason, out of the presence of the jury, as being the trial court's failure to suppress evidence of his prior conviction. The defendant's defense was that of alibi. Defendant's mother, Joan Holmes, testified that her son had accompanied her to defendant's great-grandmother's home for Thanksgiving dinner. She testified that she paid the defendant to wear a beige shirt, beige corduroy pants, black shoes, and a new beige coat which she had just

purchased. Evidently the defendant was reluctant to go, and his mother, in her desire to have him attend, offered him money to attend the Thanksgiving dinner. Witness Holmes testified that her son left the Thanksgiving dinner at approximately 11:05 p.m. and returned home at 2:30 a.m. wearing the same clothes that she had provided him. Witness Kim McNeal, defendant's cousin, testified that she and defendant had left the Thanksgiving dinner at 11:10 p.m. She stated that she dropped the defendant off at the home of a female friend who lived approximately a 15-minute drive away and that she did not see the defendant after that time. She also testified that the defendant was wearing beige pants, a beige overcoat, and black dress shoes. She testified that she remembered what the defendant was wearing because it was unusual for the defendant to be dressed up. Diane Blander, the female friend, testified that she had been at the Thanksgiving dinner and that the defendant was wearing beige pants and a beige coat. She testified that the defendant stayed at her home until about 2 a.m. Ms. Blander, on cross-examination, testified that she had had three criminal convictions within the previous ten years. Ms. Blander's daughter and son, 15 and 12 years old, testified that the defendant wore beige clothing. According to the daughter, he had been at the Blander home until 2 a.m. The son testified that he fell asleep and did not know when the defendant left. Finally, defendant's sister, Michele Denise Holmes, testified that the defendant wore beige corduroy pants and a beige jacket, that he left the Thanksgiving dinner at approximately 11 p.m. and returned home at approximately 2:30 a.m.

On appeal, defendant argues that the trial court abused its discretion in failing to exclude evidence

of his prior conviction and that the court committed reversible error by failing to articulate on the record the factors the court considered in making its determination. The admissibility of evidence of prior convictions is governed by MRE 609(a), which provides in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."

The trial court has discretion to admit evidence of a defendant's prior convictions for impeachment purposes. *People v Avery,* 114 Mich App 159; 318 NW2d 685 (1982); *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). This discretion requires the trial court to balance the probative value of evidence of the prior convictions against the prejudicial effect. *People v Avery, supra; People v Hughes,* 411 Mich 517; 309 NW2d 525 (1981). In its balance of the probative value against the prejudicial effect on the issue of credibility, the court must weigh the following three factors:

"The factors which the judge must weigh in making his determination include: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for sub-

stantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a 'bad man' or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?)." *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978).

The purpose for this threefold inquiry is:

"1) To put before the jury only those prior convictions indicative of the defendant's disposition toward truthfulness and veracity; and

"2) To keep from the jury those convictions which, although they may be indicative of defendant's disposition toward truthfulness, may interfere with the jury's ability to determine the defendant's guilt or innocence on the basis of the evidence. Such interference is what is meant by 'prejudice'.

"If, after evaluating these factors, the judge believes the prejudicial effect of admitting prior conviction evidence outweighs its probative value, the evidence should be excluded." *People v Hughes,* 411 Mich 517, 520-521; 309 NW2d 525 (1981), *reh den* 412 Mich 1101 (1981).

On appeal, the standard to be employed is:

"1) whether the trial judge recognized his discretion to decline to admit evidence of the convictions, and 2) whether the trial judge's decision was so palpably and grossly violative of fact or logic as to amount to an abuse of discretion." *People v Carpenter,* 120 Mich App 574, 580; 327 NW2d 523 (1982).

The Supreme Court in *People v Talley,* 410 Mich 378, 387; 301 NW2d 809 (1981), quoting from *People v Charles O Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972), defined abuse of discretion as follows:

" '[A]n abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' "

This Court is satisfied that the trial court exercised proper discretion in responding to defendant's two motions to suppress evidence of his prior record. The trial court stated, upon hearing the first motion, that it wished to research the question again. The trial judge referred to MRE 609 and stated that he would take the motion under advisement. At that point, the prosecutor referred the court to *People v Jones,* 98 Mich App 421; 296 NW2d 268 (1980), with the observation that the Court in the *Jones* case allowed impeachment by evidence of two prior convictions of larceny in a building when the defendant was charged with larceny in a building. After the prosecution had presented its case, defense counsel again presented its motion *in limine* to suppress evidence of defendant's prior convictions. The defense attorney argued that the evidence in the case was far from overwhelming in indicating defendant's guilt and that the defendant would be fearful of taking the witness stand if he would be impeached by evidence of his prior convictions.

The defense attorney emphasized that the similarity of prior convictions to a present charge is considered very prejudical. He further assured the trial court that, if evidence of prior convictions were suppressed, he would not convey an impression to the jury that the defendant had not committed any prior crimes. The trial judge responded by stating that he had reviewed the case of *People v Jones,* and that he was in complete agreement with *People v Jones* due to the fact that evidence of a prior conviction would be allowed in order to address credibility and that a record of stealing and dishonesty or theft would be more probative than prejudicial, and that he realized that he had discretion in making that determination and that he made it after giving the matter careful consideration. After a short recess, the defense attorney advised the court that his client decided to not take the witness stand due to the judge's ruling that evidence of the prior conviction would be admissible for impeachment purposes.

Having ascertained that the court did exercise discretion, the next question is whether the trial judge abused his discretion by ruling that evidence of defendant's prior conviction for armed robbery was admissible to impeach defendant. Because of the trial court's reference to *People v Jones,* 98 Mich App 421; 296 NW2d 268 (1980), it is important to analyze the *Jones* case. The *Jones* case also dealt with a prior conviction which was identical to the charge being faced by the defendant; *i.e.,* larceny in a building. The opinion in the *Jones* case observes that "frequently the issue of credibility is a comparison of the believability of the alleged victim or of an eyewitness with the defendant's denial". *Jones, supra,* p 428. The Court in *Jones* observed that credibility becomes a central

issue when the defendant claims that he was "ten
miles away" at the time of the incident. *Jones,
supra,* p 429. This panel disagrees with reliance on
*Jones* when it states:

"[B]oth the prejudicial effect and the probative value
on the issue of credibility are because of the true fact of
life, based on human experience and fundamental to
human insight, that it is more probable that a person
has committed a crime if he has done it before, maybe
several times. A jury should not be deprived of that
information simply because the crimes are similar or
because the criminal record is extensive." *Jones, supra,*
p 429.

The foregoing observation is directly contrary to
present case law which holds that this constitutes
one of the prime reasons why such evidence should
not be allowed. However, the opinion in the *Jones*
case continues to observe that credibility consti-
tutes a crucial factor to be considered under the
balancing requirements of MRE 609, which is
applicable where the defendant's testimony di-
rectly contradicts the testimony of one or more
key prosecution witnesses. *Jones, supra,* p 430.
Finally, the opinion in the *Jones* case observes
that convictions involving theft, dishonesty, or
false statement are especially probative and, if a
trial court found that the probative value out-
weighed the prejudical effect, its decision could
hardly be considered an abuse of discretion. *Jones,
supra,* p 432. Although this Court, as stated above,
does not fully agree with the analysis in *People v
Jones,* we do not find that the trial court here
abused its discretion after having studied the
*Jones* case and finding that it provided a valid
precedent for the trial court's determination re-
garding defendant Holmes.

The fact that the prior conviction was for a criminal offense identical to one of the present counts charged requires more caution regarding the admissibility of evidence of that conviction. At the time the trial court made its determination, the case of *People v Hughes,* 411 Mich 517; 309 NW2d 525 (1981), had not yet been decided. Also, it is significant that, in the *Hughes* case, evidence of the prior conviction was for an offense approximately 14 years old, thus violating the 10-year rule. However, the case of *People v Monasterski,* 105 Mich App 645; 307 NW2d 394 (1981), was in effect. The opinion in the *Monasterski* case states that, although a defendant's decision not to testify out of fear of impeachment shows he has been adversely affected by the trial court's ruling, it is not an abuse of discretion to refuse to suppress evidence of the defendant's criminal record where the defendant was able to present his alibi defense through another witness. *Monasterski, supra,* p 656. Here defendant presented his alibi defense through five defense witnesses; thus this Court is satisfied that the defendant had alternative means of providing his defense and that the trial court, therefore, did not abuse its discretion by failing to suppress evidence of the defendant's prior conviction for armed robbery. Finally, the similarity between the prior conviction and the charged crime does not, per se, bar the use of evidence of prior convictions for impeachment purposes pursuant to *People v Carpenter,* 120 Mich App 574; 327 NW2d 523 (1982). The Court in *Carpenter* stated that evidence of prior convictions is especially probative where there is a "classic credibility contest between defendant and the prosecution's witnesses". *Carpenter, supra,* p 581. The Court in *Carpenter* concluded that, in such a credibility contest, it was proper for the court to conclude

that the probative value outweighed any prejudicial effect and cited *People v Monasterski, supra,* to that effect. This Court finds that the issue of credibility is also crucial in the present case and that the trial court did not abuse its discretion. The case of *People v Hayes,* 410 Mich 422; 301 NW2d 828 (1981), is distinguishable in that the trial judge determined that he would either admit evidence of prior convictions of prosecution and defense witnesses equally, or he would exclude such evidence equally. The Court in *Hayes* found that the trial court had impermissibly delegated its discretionary powers to the parties. It is interesting to note that the Court in *Hayes* referred to *Gordon v United States,* 127 US App DC 343, 347; 383 F2d 936, 940 (1967), which recognizes that admission of evidence of "the same crime should be admitted sparingly", but that, "one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity". Thus again, there is a suggestion that evidence of a prior conviction may be admitted provided there is a strong reason for disclosure. Finally, the case of *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), is distinguishable in that the trial court found that the similarity of the prior offense favored admissibility. The trial court's interpretation was thus found to constitute error requiring reversal due to the Court's having applied an incorrect standard.

Defendant argues that the pretrial line-up was constitutionally defective. Defense counsel, on appeal, incorrectly argues that the trial court denied a request for an evidentiary hearing as to the

constitutionality of the line-up. This assertion is incorrect in that defense counsel submitted a motion to suppress, but did not move for an evidentiary hearing. A photograph of the pretrial line-up was admitted into evidence, thus enabling the trial court to review defendant's argument that there were defects in the line-up due to height and weight discrepancies. However, such discrepancies do not necessarily make line-ups constitutionally defective. *People v Taylor,* 24 Mich App 321; 180 NW2d 195 (1970); *People v Hughes,* 24 Mich App 223; 180 NW2d 66 (1970); *People v Mack,* 21 Mich App 96; 174 NW2d 857 (1970). On appeal, we have also reviewed exhibit 2 which is a photograph of the line-up and observe that the line-up was not impermissibly suggestive in that, although defendant was next to the tallest person in the line-up, his height was substantially similar to that of three of the other persons involved in the line-up. Further, the defendant may have been somewhat heavier than others in the line-up, yet his somewhat stocky build was also substantially similar to three other persons in the line-up. One of the persons in the line-up who was not the defendant was taller than the rest and had a slimmer build; thus his presence may have impaired the line-up from being composed of what otherwise would have been five very similar people. However, because the tallest person was not the defendant, his presence did not create any impermissible suggestiveness. Finally, even regarding said tallest person, his height and build was not of a substantial difference but only a noticeable difference. Further, this Court concludes that there was an independent basis for identification of the defendant based upon witness Zeitz's observation of the defendant prior to his entering the rest room and his face-to-face confrontation with her as he tried to

seize her purse. Further, although the gas station attendant did not positively identify the defendant at the line-up, she expressed considerable certainty at the trial stage. Finally, the Court observes that none of the three identifying witnesses identified someone other than the defendant as the perpetrator. Certainly, the situation involved a high degree of stress resulting from the robbery and firing of a weapon. However, there is no showing that any of the identifying witnesses reacted in a manner that would show loss of control or mental deviation. In fact, witness Zeitz continued to assert herself against the defendant by wrestling to keep her purse and only yielded when the defendant shot at her boyfriend. The gas station attendant never was directly threatened and there was no showing that her psychological state was otherwise impaired. In conclusion, based on *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), this Court finds that the factors weighed show that the in-court identification had an independent basis.

Pursuant to *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), when a jury becomes deadlocked, the proper instructions for the jury are derived from ABA standard jury instruction 5.4 which reads as follows:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury;

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it apears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

In the present case, the trial court gave the following instruction after the jury had deliberated for approximately one-half day:

"In order to return a verdict, each juror must agree thereto; that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment.

"That each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"That in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of his opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"You should consider that the case should, at some time, be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men and

women more intelligent, more impartial, or more competent to decide it, or that more clearer evidence will be produced on the one side or the other. And, with this in view, it is your duty to decide the case if you can conscientiously do so without surrendering your conscientious belief."

Pursuant to *People v Johnson,* it is necessary to determine whether there has been a substantial deviation from the instruction approved in *People v Sullivan, supra,* and from ABA standard jury instruction 5.4. It is readily apparent that the trial court followed § 5.4 literally until the last full paragraph cited above. The additional language contains no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion. The fact that the jury returned within one-half hour does not in itself constitute proof of coercion. The trial court specifically stated that any decision reached should be reached conscientiously without surrendering one's conscientious belief. The additional language supplied by the court did not constitute error requiring reversal and did not constitute a substantial deviation. *People v Johnson,* 112 Mich App 41; 314 NW2d 794 (1981). By so ruling, this Court, however, does not advocate that trial courts supply such additional language in their instructions to a deadlocked jury.

Affirmed.

SHEPHERD, J., concurred.

M. J. KELLY, P.J. *(concurring).* I concur with the majority opinion subject to the following observations.

First, I agree with Justice LEVIN's concurring opinion in *People v Talley,* 410 Mich 378, 393; 301 NW2d 809 (1981), regarding the dangers inherent

in the overly restrictive *Spalding*[1] definition of what constitutes an abuse of a trial court's discretion. See also *Guzowski v Detroit Racing Ass'n, Inc,* 130 Mich App 322; 343 NW2d 536 (1983). However, since I also believe that the trial court in this case exercised its discretion in a reasonable manner under MRE 609, I agree that the admission of evidence of defendant's prior convictions does not constitute reversible error.

Nor do I concur with the majority opinion's critique of *People v Jones,* 98 Mich App 421; 296 NW2d 268 (1980).

Finally, I do not agree that an otherwise valid line-up was impaired by the presence of one person taller than the others. Discrepancies in height do not necessarily result in constitutionally defective line-ups, *People v Barnes,* 107 Mich App 386, 389-390; 310 NW2d 5 (1981), *lv den* 413 Mich 867 (1982), and I find nothing in the briefs or records to indicate that the line-up here was in any way suggestive.

---

[1] *Spalding v Spalding,* 355 Mich 382, 384; 94 NW2d 810 (1959).