PEOPLE v JAMES

Docket No. 124201. Submitted December 26, 1989, at Lansing. Decided July 2, 1990. Leave to appeal applied for.

Jerald James, also known as James Orlando, was convicted following a bench trial in the Recorder's Court for the City of Detroit, Wendy M. Baxter, J., of two counts of armed robbery and possession of a firearm during the commission of a felony. Defendant appealed claiming that the trial court did not secure a proper waiver of defendant's right to a jury trial, that an identification lineup conducted by the police was unduly suggestive, and that the preliminary examination testimony of a complainant who did not appear at trial was improperly admitted at trial.

The Court of Appeals *held:*

1. The trial court did not secure a proper waiver of defendant's right to a jury trial.

2. The lineup was not impermissibly suggestive and did not deny defendant due process of law.

3. The trial court should not have adjourned the trial to allow the prosecutor the opportunity to find the missing witness.

4. The prosecution's efforts to procure the missing complainant's presence, although extensive, were incomplete and came too late in the proceedings to constitute a diligent, good-faith effort to procure his presence at trial. Admission of his preliminary examination testimony was improper and, since he was the only person to identify defendant, requires reversal.

Reversed and remanded.

REILLY, J., dissented. She agrees that the lineup was not impermissibly suggestive. While finding the trial court's inquiry as to the voluntary nature of the waiver of a jury trial to be flawed, she would not reverse on this ground, but would re-

REFERENCES

Am Jur 2d, Criminal Law §§ 894-896, 898, 965, 974.

Admissibility or use in criminal trial of testimony given at preliminary proceeding by witness not available at trial. 38 ALR4th 378.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

mand for a proper determination. She would find no abuse of discretion in the adjournment of the trial to allow the prosecutor the opportunity to find the missing witness and would also find no abuse of discretion in the admission of that witness' preliminary examination testimony.

1. CRIMINAL LAW — WAIVER OF JURY TRIAL.

To assure compliance with the statutory requirement that a defendant's waiver of his right to a jury trial must be made in writing and in open court, the trial court must make a finding of fact on the record based upon information conveyed to the judge in open court by the defendant, or in his presence, that the defendant has personally, voluntarily, and understandingly given up his right to trial by jury, that the defendant has personally signed the waiver of trial by jury form prescribed by the statute, and that all of the foregoing occurred after the defendant was arraigned on the information and had an opportunity to consult with counsel (MCR 6.402; MCL 763.3; MSA 28.856).

2. CRIMINAL LAW — LINEUPS.

The fact that there are actual differences in physical characteristics among lineup participants does not necessarily amount to impermissible suggestiveness; differences are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in a lineup.

3. CRIMINAL LAW — EVIDENCE — UNAVAILABLE WITNESSES — PRIOR TESTIMONY.

The prosecutor may be permitted to introduce at trial the testimony of a witness at a prior hearing in the same case on condition that the prosecutor show that the witness is unavailable and that the testimony bears satisfactory indicia of reliability; such infringement on the right of confrontation is constitutionally tolerable when defendant had an opportunity and similar motive at the prior hearing to develop the witness' testimony and the prosecutor establishes that he made a diligent, good-faith effort to obtain the witness' presence at trial; the determination whether the prosecutor made a diligent, good-faith effort is made in light of the totality of the circumstances (MRE 804[a][5] and [b][1]).

4. CRIMINAL LAW — WITNESSES — SERVICE OF SUBPOENA.

The fact that a mailed subpoena is not returned does not permit the assumption that it was received and that the witness will appear at trial (MCR 2.506[G][1] and [2]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett*), for defendant on appeal.

Before: WAHLS, P.J., and McDONALD and REILLY, JJ.

WAHLS, P.J. On October 27, 1986, following a bench trial in Detroit Recorder's Court, defendant Jerald James was convicted of two counts of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On November 10, 1986, defendant was sentenced to concurrent terms of 2½ to 7 years imprisonment for the armed robbery convictions and a consecutive term of 2 years imprisonment for the felony-firearm conviction. Defendant appealed and this Court reversed defendant's convictions because there was no record showing that defendant waived his right to a jury trial in open court, MCL 763.3; MSA 28.856. *People v James,* unpublished opinion per curiam of the Court of Appeals, decided June 14, 1989 (Docket No. 99073). We also denied the prosecutor's motion for rehearing. However, our Supreme Court has remanded the case to this Court "for consideration as on rehearing granted." *People v James,* 433 Mich 908 (1989).

The issues raised in defendant's appeal are whether the trial court secured a proper waiver of defendant's right to a jury trial, whether an identification line-up conducted by the police was unduly suggestive, and whether the trial court properly

admitted the preliminary examination testimony
of a complainant who did not appear at trial.

I

On October 22, 1982, at approximately 2:00 A.M.,
Marilyn Reid and Gregory Hinton were walking
on Fullerton Street near Dexter in Detroit when a
station wagon carrying four men stopped next to
Reid and Hinton. Three of the men, one of whom
was armed with a shotgun, got out of the car and
demanded money and Hinton's coat. The three
men got back in the station wagon with Reid's
purse and gold necklace and Hinton's coat. Reid
and Hinton walked home and did not report the
incident to police.

Less than forty-five minutes after Reid and Hin-
ton were robbed, police officers received a report
concerning a vehicle that was involved in an
armed robbery. They began following a station
wagon which matched the description they had
been given. The officers followed the station wagon
into an alley where the two occupants of the
vehicle jumped out and ran off. Defendant was the
driver of the station wagon. The officers saw defen-
dant throw a shotgun over his head as he ran off.
Defendant and another man were found lying face
down on a nearby porch. The officers recovered
Reid's purse and necklace from the station wagon.
Hinton's coat was recovered elsewhere.

Reid testified at defendant's trial that she could
not identify any of the men who robbed her.
Although Hinton testified at defendant's prelimi-
nary examination on November 1, 1982, and at an
evidentiary hearing on April 6, 1983, he did not
appear for defendant's trial in October, 1986. Hin-
ton's preliminary examination testimony identify-
ing defendant as the man holding the shotgun
during the robbery was read at defendant's trial.

The record does not disclose the reason defendant's trial was held four years after the preliminary examination.

## II

Before analyzing the issue whether the trial court secured a proper jury trial waiver, we note that the assistant prosecutor in her motion in this Court for rehearing on this issue stated that "[t]his Court's acceptance of the defendant's unsupported claim is perplexing but not as bewildering as this Court's refusal to follow its own decisions and accord the lower court the presumption that it followed the law. *People v Iacopelli,* 141 Mich App 566 [367 NW2d 837] (1985); *People v Kelly,* 122 Mich App 427 [333 NW2d 68] (1983)." Doubtless, if the assistant prosecutor were in our position, she would find it far more perplexing and bewildering that a transcript for which defendant made two formal requests was not made available to defendant or this Court until two weeks after our original decision when the assistant prosecutor filed the transcript with her motion for rehearing. It is absurd to suggest under these circumstances that this Court should have effectively waived defendant's issue. Cf. *Iacopelli, supra; Kelly, supra.*

MCL 763.3; MSA 28.856 requires that a defendant's waiver of his right to a jury trial must be made in writing and "in open court." In *People v Pasley,* 419 Mich 297, 302-303; 353 NW2d 440 (1984), the Supreme Court held that

*in order to assure compliance with the statute, we will require* that the record of a trial show that the trial court has made *a finding of fact on the record* based upon information conveyed to the judge in open court by the defendant, or in his presence, [1] that the defendant has personally,

voluntarily, and understandingly given up his right to trial by jury; *[2]* that the defendant has personally signed the waiver of trial by jury form prescribed by the statute; *[3]* that the waiver of trial by jury form has been filed in the case; and *[4]* that all of the foregoing occurred after the defendant was arraigned on the information and had an opportunity to consult with counsel. [Emphasis and numbering added.]

The express purpose of the *Pasley* rule is to assure compliance with the statute. Ultimately, the purpose of the rule is to assure that defendant's constitutional right to a jury trial is honored. See US Const, Am VI; Const 1963, art 1, § 14. Thus, the rule in *Pasley* is analogous to other judge-made prophylactic rules which, in light of their purpose, should be strictly observed. See, e.g., *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The issue in this case, then, is not simply whether the trial court complied with the statute, but whether the trial court complied with the requirements of *Pasley* which in turn assures compliance with the statute.

In this case, the following discussion occurred at the final pretrial conference on September 26, 1986:

> *Ms. Ashford:* Good morning, your honor. Linda D. Ashford on behalf of Mr. James.
> *The Court:* All right. I have in my hand what purports to be a waiver of trial by jury signed by your client. Would you give me your name, sir?
> *Defendant James:* Orlando James.
> *The Court:* All right. Is this your signature on this form, a waiver of trial by jury?
> *Defendant James:* Yes.
> *The Court:* Tell me how old you are, sir?
> *Defendant James:* Twenty-one.
> *The Court:* Can you read and write?

*Defendant James:* Yes.

*The Court:* Did you read this before you signed it?

*Defendant James:* Yes.

*The Court:* You understand you have a constitutional right to have a jury trial?

*Defendant James:* Yes I do.

*The Court:* And knowing that, you wish to give up that right and proceed to a trial by this court?

*Defendant James:* Yes.

*The Court:* All right. The record will so reflect.

The record of the waiver in this case is similar to that in *Pasley* which the Supreme Court held was proper. Cf. *Pasley, supra,* pp 300-301. However, the Supreme Court in *Pasley* must not have applied the new rule, but must have applied the lesser interim standard it announced for reviewing waivers made no more than thirty days after the release of *Pasley,* because the trial court in *Pasley* did not make any findings of fact. See *Pasley, supra,* pp 303-304. Since we must apply the new rule, our analysis cannot conclude with a simple determination whether the questioning by the trial court in this case was more or less extensive than in *Pasley.* Cf. *People v Margoes,* 141 Mich App 220; 366 NW2d 254 (1985) (waiver on August 1, 1983, one year before release of *Pasley,* held valid because the questioning was more extensive than in *Pasley*).

*Pasley* requires specific findings on enumerated factors, or at least an approximation of such findings. Moreover, *Pasley* places great emphasis on *oral* communication in open court of sufficient information to support the required findings. *People v Sullivan,* 167 Mich App 39, 45; 421 NW2d 551 (1988). In this case, the trial court made, at best, only a general finding of a proper waiver. Moreover, there clearly was no oral communica-

tion to the trial court that defendant was *voluntarily* waiving his right to a trial by jury and, thus, a finding of voluntariness was not subsumed by the trial court's general finding. Cf. *Margoes, supra,* pp 222-223. We conclude that the trial court did not secure a proper waiver of defendant's right to a jury trial.

We do not consider the strict requirements of the procedure set forth in *Pasley, supra,* pp 302-303, to be burdensome. Those requirements, with one exception, are now "codified" in MCR 6.402. The trial court is still required to "*ascertain,* by addressing the defendant personally, that the defendant understands the right [to trial by jury] and that the defendant voluntarily chooses to give up that right and to be tried by the court." MCR 6.402(B). The trial court is not required to ascertain on the record in open court that a written waiver complying with the statute has been signed by defendant and filed in the case. To that extent, *Pasley* is overruled, and the statute is superseded. Const 1963, art 6, § 5; MCR 6.001.

### III

Pretrial identification procedures which are so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification constitute a denial of due process of law. *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968); *Stovall v Denno,* 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967); *People v Anderson,* 389 Mich 155, 168; 205 NW2d 461 (1973). The determination whether identification procedures constitute a denial of due process is made in light of the totality of the circumstances surrounding the pretrial identification. *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401

(1972); *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974). If the procedures denied due process, then tainted identification testimony must be excluded at trial unless the prosecutor shows by clear and convincing evidence that the testimony has a basis independent of the pretrial identification. *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967); *People v Kachar,* 400 Mich 78, 91, 95-97; 252 NW2d 807 (1977). This Court applies these same standards when reviewing the trial court's rulings and will reverse if it finds that identification testimony was erroneously admitted unless it also finds that the error was harmless. *Anderson, supra,* p 169.

On appeal, as in the trial court, defendant recites statistics from the line-up which show that defendant was among the heaviest and youngest of the participants. Although his height was in the midrange of participants, one participant was three inches shorter than defendant and another was six inches shorter. In the trial court, defendant also argued that his hair was shorter than that of the other participants. Defendant claims that "[t]he composition of the line-up in effect funneled Mr. Hinton's attention to the only person in the line-up who possessed all of the qualities Mr. Hinton had previously listed in his description to the police." We disagree.

The constitutional standard condemns unnecessarily suggestive procedures which give rise to a *substantial* likelihood of irreparable misidentification. *Stovall, supra; Anderson, supra.* Thus, the police are not required to construct a line-up of persons whose physical characteristics exactly match defendant. *People v Holmes,* 132 Mich App 730, 746; 349 NW2d 230 (1984). The fact that there are actual differences in physical characteristics among line-up participants does not necessarily

amount to impermissible suggestiveness. Differences are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up. See *id.* It is then that there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification.

In this case, the trial court agreed that the shortest participant in the line-up should not have been included in the line-up. However, the remaining five participants, including defendant, appeared to be of varying heights and weights, but not substantially different from defendant. According to the trial court, defendant looked older than his age in person. The trial court noted that the witness based his identification of defendant on a positive recognition of defendant's face, which the witness viewed during the robbery from ten feet away for thirty seconds only twelve hours before the line-up.

Defendant's claim that the witness' attention was "funneled" to defendant by the physical differences among the line-up participants is not supported by any testimonial or physical evidence in the record. We agree with the trial court that the pretrial identification procedures were not impermissibly suggestive and, therefore, did not constitute a denial of due process of law.

IV

The prosecutor may be permitted to introduce at trial the testimony of a witness at a prior hearing in the same case on condition that the prosecutor show "that the witness is unavailable and that the testimony bears satisfactory indicia of reliability."

*People v Dye,* 431 Mich 58, 65; 427 NW2d 501 (1988), cert den 488 US 985 (1988); MRE 804(b)(1). The prosecutor's burden is substantial because the admission of prior testimony infringes on defendant's constitutional right to be confronted with the witnesses against him, US Const, Am VI; Const 1963, art 1, § 20. See *Dye, supra,* pp 64-66. However, the infringement on defendant's right of confrontation is constitutionally tolerable when defendant had an opportunity and similar motive at the prior hearing to develop the witness' testimony and the prosecutor establishes "that he has made a diligent, good-faith effort to obtain the witness' presence at trial." *Dye, supra,* p 66; MRE 804(a)(5) and (b)(1). The determination whether the prosecutor made a diligent, good-faith effort is made in light of the totality of the circumstances. *Dye, supra,* p 67.

In the present case, at the start of defendant's trial the prosecutor informed the trial court that one of the complainants, Hinton, had not appeared for trial yet and that a continuance might eventually be necessary to procure Hinton's presence. That afternoon, the prosecutor informed the court that a subpoena was mailed to Hinton prior to trial and was not returned undelivered by the post office, so it was assumed by the police and the prosecutor that Hinton received the subpoena and that no further efforts were necessary to procure his presence at trial. During the noon recess of the first day of trial, a police officer went out to Hinton's address and found mail addressed to Hinton there, but did not find anyone at home. On the basis of that information, the trial court denied defendant's motion to dismiss and granted the prosecutor's motion for a continuance over the weekend so that the police could try to locate Hinton. A bench warrant was issued for Hinton's

arrest, although there was no proof that Hinton ever received the subpoena.

On Monday, the prosecutor informed the trial court that an investigation by police officers over the weekend had not located Hinton. Testimony offered by the prosecution showed that police officers had telephoned area hospitals and jails, a state prison, the county morgue, the utilities, MESC and social services, and Hinton's sister. Hinton's sister informed the police that Hinton no longer lived with her and that she had not seen him for three months.

The trial court found that the prosecutor had shown "unavailability and also demonstrated due diligence such that the prior testimony of Gregory Hinton . . . can be used." We disagree.

We are persuaded that the efforts to procure Hinton's presence, although extensive, were incomplete and came too late in the proceedings to constitute a diligent, good-faith effort to procure Hinton's presence at trial. Hinton was easily the most important witness against defendant and had not been contacted in the case for over 3½ years. Due diligence certainly required more than simply mailing out subpoenas and then waiting until the day of trial to see who appeared. Some effort should have been made before trial to ensure that Hinton was served with a subpoena and that a return of service was filed with the court. A series of phone calls after trial began was not an adequate substitute.

As indicated, the trial court agreed with the prosecutor that "[u]nder the new court rules, service is allowed by mail in this matter." The only court rule cited by either party on this issue is Detroit Recorder's Court Local Rule 2.506 which does not provide for service by mail and arguably

requires personal service by an officer of the Detroit Police Department. However, MCR 2.506(G)(2), which was relatively new at the time of trial, provides for service of a subpoena "by mailing to a witness a copy of the subpoena and a postage-paid card acknowledging service and addressed to the party requesting service."

Contrary to the prosecutor's interpretation of MCR 2.506(G)(2), the fact that a mailed subpoena is not returned does not permit the assumption that it was received and that the witness will appear at trial. The rule specifically provides that "[i]f the card is not returned, the subpoena must be served in the manner provided in [MCR 2.506] (G)(1)," which provides for service "in the manner provided by MCR 2.105." Thus, when "the card is not returned," the prosecutor may then attempt service by registered or certified mail, MCR 2.105(A)(2), but, if that fails to effect service, the prosecutor ultimately must attempt personal service, MCR 2.105(A)(1).

Where, as in this case, only a failed attempt at service by standard mail is shown, a finding of diligent, good-faith effort is absolutely unwarranted. Moreover, the trial court should not have adjourned the trial to allow the prosecutor an opportunity to produce the witness. MCR 2.503(C). Regardless, admission of Hinton's preliminary examination testimony was improper and, since Hinton was the only person to identify defendant, requires reversal.

To the extent that Detroit Recorder's Court Local Rule 2.506 is in conflict with or regulates matters covered by MCR 2.503(C) and 2.506(G), it is invalid. MCR 6.001 and 8.112.

Reversed and remanded.

McDONALD, J., concurred.

REILLY, J. *(dissenting)*. I respectfully dissent. With respect to the issue of the jury trial waiver, I agree that the trial court did not make a finding on the record that defendant voluntarily waived his right to a jury in open court, even though defendant acknowledged that he signed a written waiver which indicated that his consent was voluntary. However, the fact that the court failed to make an inquiry as to the voluntary nature of the waiver does not compel the conclusion that the consent was given involuntarily. I would not reverse, but would remand for a determination by the trial judge as to whether the waiver by defendant was voluntary.

I agree that the identification line-up was not impermissibly suggestive and was properly admitted as evidence.

Finally, I disagree with the majority that the trial judge abused his discretion by granting an adjournment on Friday to allow the prosecutor an opportunity over the weekend to attempt to find the missing complaining witness. That decision was not so palpably and grossly violative of fact and logic that it evidences perversity of will, or passion or bias. *People v Pullins,* 145 Mich App 414, 417-418; 378 NW2d 502 (1985); *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959). I agree with the trial court that the prosecutor's efforts to find the complaining witness were extensive and made in good faith, albeit after the trial was in progress. However, the lateness of the inquiry should not negate the prosecutor's efforts, as it is apparent that even if the investigation into the witness' whereabouts had begun several weeks before trial, it would have been unsuccessful, as the last person who is known to have seen defendant was his sister, and she had not seen him in

the three months before trial. I believe the trial
judge did not abuse his discretion in allowing the
use of the preliminary examination testimony of
the complaining witness at trial. *Pullins, supra* at
418-419; *Spalding, supra.*