# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DESMOND DUANE-MARK LEFLORE,

       Defendant-Appellant.

UNPUBLISHED
July 21, 2016

No. 326664
Wayne Circuit Court
LC No. 14-007568-FC

Before: SHAPIRO, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for carjacking, MCL 750.529a, two counts of armed robbery, MCL 750.529, unlawfully driving away a motor vehicle, MCL 750.413, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Because defendant was not denied the effective assistance of counsel, we affirm.

This case arises from the armed robbery and carjacking of John Freeman and his landscaping colleague, Eddie Fosnaugh, which occurred on August 19, 2014, at the corner of Rossini Drive and Brock Avenue in Detroit. Freeman and Fosnaugh had just finished yardwork on a nearby property and they were sitting in their truck, entering the address information for their next job into a GPS, when they were approached by two men, later identified as defendant and Vantrais Cross. The record evidence shows that defendant stood outside Freeman's driver's side window and Cross stood outside the passenger's side window, where Fosnaugh was seated as a passenger. Defendant pulled out a handgun and pointed it directly at Freeman, and he demanded that both Freeman and Fosnaugh relinquish all their personal property. Defendant then ordered Freeman and Fosnaugh to exit the truck. Shortly thereafter, defendant and Cross drove off with the truck, an attached trailer containing landscaping equipment, and all of Freeman's and Fosnaugh's personal belongings.

The incident was reported to police and, by tracking an i-phone taken during the robbery, police located the truck and many of the stolen items. Cross was arrested with stolen property in

his possession and, although neither victim identified Cross in a line-up, after police returned Freeman's property, Freeman discovered a photograph of Cross on his cellular telephone.[1] Acting on tips that defendant was also involved, defendant's photograph was placed in a photographic array. Fosnaugh did not identify anyone in the photographic array. However, Freeman positively identified defendant in the array, explaining that defendant "was the one that pulled the gun and mostly talked" during the carjacking. Freeman also later identified defendant at a preliminary examination and again at trial. At trial, on a scale of 1 to 10, Freeman stated his certainty with respect to defendant's identity as a "10." The jury convicted defendant as noted above. Defendant now appeals as of right.

On appeal, defendant argues that he is entitled to a new trial because he was deprived of the effective assistance of counsel. In particular, defendant contends that trial counsel should have sought suppression of Freeman's pre-trial identification of defendant and that counsel's failure to do so prejudiced defendant. According to defendant, counsel would have succeeded on a motion to suppress Freeman's pre-trial identification because (1) Detroit Police Detective Dana Russell used her own subjective judgment in compiling the photographic array, (2) Russell was unable to give a definitive time of when the identification was made, (3) the whole carjacking incident lasted less than five minutes, during which time Freeman's opportunity to observe defendant was extremely limited, (4) Freeman could not provide police with any unique features of defendant, and (5) the photographic array contained at least three individuals who were of "slight build" and three individuals who had "dark" complexions.

To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move for a new trial or for a *Ginther*[2] hearing in the lower court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Here, defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, this issue is unpreserved for appellate review. See *id*. When a claim of ineffective assistance of counsel has not been preserved for appellate review, this Court's review is limited to errors apparent on the record. *Id*.

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). Defense counsel has wide discretion in matters of trial strategy, including whether to move to suppress evidence. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted).

---

[1] Cross pled guilty to carjacking, two counts of armed robbery, and unlawfully driving away a motor vehicle. He is not a party to this appeal.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Trial counsel will not be considered ineffective for failing to file a futile motion. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

In this case, any motion to suppress Freeman's pre-trial identification would have been futile, and thus defendant has not overcome the presumption that counsel provided effective assistance. "A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013). "Generally, the photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (citation omitted).

> As a general rule, physical differences between a suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness. . . . Differences among participants in a lineup are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up. . . . It is then that there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification. [*People v Henry (After Remand)*, 305 Mich App 127, 161; 854 NW2d 114 (2014) (citation omitted).]

Indeed, even if a photographic array can be considered suggestive, "a suggestive lineup is not necessarily a constitutionally defective one." *Kurylczyk*, 443 Mich at 306. "Rather, a suggestive lineup is improper only if under the totality of the circumstances there is a substantial likelihood of misidentification." *Id*. When evaluating the likelihood of misidentification, factors that a court will consider are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*Id.* (citation omitted).]

In this case, the photographic array consisted of six photographs, including a photograph of defendant. The photographs are all the same size and there is nothing in the composition or arrangement of the photographs to draw attention to defendant. Likewise, there is no indication that police said or did anything while Freeman viewed the array which might render the procedure unduly suggestive.[3] Further, with respect to the physical features and clothing of the

---

[3] Defendant suggests on appeal that Russell's "subjective" selection of photographs for the array somehow renders the array infirm. He provides no authority for this proposition, nor are we aware of any such authority. We consider this argument abandoned. See *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014).

individuals depicted, there is nothing to substantially distinguish defendant from the other participants in the array. The men appear to be of similar ages, all the participants are African-American, all the participants have facial hair, they also all have relatively short dark hair, they are all wearing plain white t-shirts, and the pictures are cropped to show from the shoulders up, making it difficult to discern differences in the participants' respective heights. Having viewed the array, we see nothing to substantially distinguish defendant from the other participants in a manner that could be considered suggestive. See *McDade*, 301 Mich App at 357.

Nonetheless, on appeal, defendant asks this Court to ignore the substantial similarities among the participants and to find the array impermissibly suggestive based on purported differences in size and complexion among the array participants. That is, defendant maintains that the array was impermissibly suggestive because three of the participants were "slight" in build and three had "dark" complexions compared to the other participants. However, "[i]f one were to accept defendant's complaints about the slight physical differences or variations, it would make it nearly impossible for the police to compose a lineup, forcing authorities to search for 'twin-like' individuals to match against a defendant." *Id.* at 358. Such a high degree of similarity is neither feasible nor constitutionally required. Instead, viewing defendant in the group, defendant was by no means significantly distinguished from the other participants on the basis of size or complexion, and any minor differences among the individuals did not render the array impermissibly suggestive. See *id.*; *People v Hornsby*, 251 Mich App 462, 467; 650 NW2d 700 (2002); *People v Holmes*, 132 Mich App 730, 746; 349 NW2d 230 (1984).

Moreover, even if the lineup could be described as suggestive, it would only be constitutionally defective if, under the totality of the circumstances, there was a substantial likelihood of misidentification. Under the totality of the circumstances, it is apparent from the record that the photographic array procedure did not give rise to a substantial likelihood of misidentification, which would have made the procedure unduly suggestive. First, it is apparent that Freeman had ample time and opportunity to view defendant during the armed robbery, which occurred outside during daylight hours and which lasted for approximately five minutes during which defendant was within arm's length of Freeman. Second, although Freeman noted that he looked at the gun and at Fosnaugh at points during the robbery, he also emphasized that he was face-to-face with defendant and focused on following defendant's instructions, so we do not think Freeman's degree of attention detracts from his identification. Third, Freeman's description of defendant to police was generally consistent with defendant's appearance.[4] Fourth, the photographic array identification procedure was conducted close in time to the carjacking, approximately 12 hours after the crime occurred.[5] Fifth, prior to the photo lineup the witness was shown a physical lineup in which defendant was not included, and he stated that the

---

[4] Defendant notes that Freeman failed to describe any "unique" features of defendant, but defendant does not identify what "unique" features Freeman omitted and he points to no specific inaccuracy in Freeman's description to police.

[5] Defendant asserts that Russell could not provide the exact time of Freeman's identification. However, the photographic array was time stamped 10:11 p.m., which was approximately 12 hours after the carjacking and armed robbery occurred.

assailant was not in it. Finally, Freeman's quick identification of defendant suggested a high level of certainty. For instance, Russell testified that "it didn't take long at all" for Freeman to make the identification.

On this record, considering the totality of the circumstances, it is apparent that Freeman had no difficulty in identifying defendant, and there is no evidence to suggest that an unduly suggestive identification procedure was used to create a substantial likelihood of misidentification. Thus, trial counsel's performance was not deficient because there was no basis to challenge the photographic array identification, and trial counsel was not required to make a futile motion. *Fonville*, 291 Mich App at 384.

Further, even if counsel could have filed a successful motion to suppress, defendant has failed to overcome the presumption that counsel's decision not to do so was a matter of trial strategy, and defendant has not shown how trial counsel's failure to file a pretrial motion prejudiced him. Had Freeman's pre-trial identification been suppressed, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. In our judgment, given Freeman's ample opportunity to view defendant face-to-face in broad daylight, there existed an independent basis for Freeman to identify defendant in court. Cf. *McDade*, 301 Mich App at 359. See also *People v Gray*, 457 Mich 107, 115-118; 577 NW2d 92 (1998). Given this independent basis for Freeman's in-court identification, defense counsel may well have had strategic reasons for failing to object to the introduction of the pre-trial identification, see *People v Turner*, 115 Mich App 247, 251; 320 NW2d 57 (1982), and, given Freeman's high degree of certainty at trial, defendant has not shown a reasonable probability of a different outcome had counsel moved to suppress the pre-trial identification. In sum, defendant's ineffective assistance claim is without merit. See *Lopez*, 305 Mich App at 693.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause

-5-