# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENNETH DARNELL BULLOCK,

        Defendant-Appellant.

UNPUBLISHED
January 15, 2015

No. 317639
Wayne Circuit Court
LC No. 13-001169-FC

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 30 to 70 years' imprisonment for the carjacking and armed robbery convictions, time served for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. Because defendant was not denied the effective assistance of counsel, we affirm.

This case arises from a carjacking and armed robbery that occurred on October 20, 2011, in Detroit, Michigan. Complainant, Yulanda Russell, testified that after she pulled into her driveway and exited her black 2012 Dodge Charger, defendant approached her and threatened her with a handgun. Russell fell backwards, and defendant grabbed her purse and the keys to her car. Defendant then drove away in the Charger with Russell's purse.

Police recovered Russell's car during an undercover operation in early 2013. The car was posted for sale on the website Craig's List and advertised as a 2011 model year Charger. The seller covered the car's 2012 model year VIN, or vehicle identification number, with a fraudulent VIN sticker corresponding to a 2011 Charger. Defendant arrived as the police were taking the seller into custody and claimed that the car belonged to him. Defendant produced a title to the car matching the fraudulent VIN, and the police placed him under arrest as well.

Russell identified defendant in a corporeal lineup on January 14, 2013, and testified regarding the identification at trial. Defendant's trial counsel sought to undermine the accuracy of Russell's identification by arguing that the lineup was unfairly suggestive. Defense counsel also chose not to call defendant's proposed alibi witness, Dickow Dehko. The jury ultimately convicted defendant on all of the charged offenses.

-1-

On appeal, defendant argues that his trial counsel rendered ineffective assistance in failing to challenge the allegedly suggestive lineup and in failing to call Dehko as a witness.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*., citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

To establish a claim of ineffective assistance of counsel, defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); *Lockett*, 295 Mich App at 187. "Defense counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.'" *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), quoting *Strickland*, 466 US at 690. Defendant bears the burden of overcoming this presumption. *LeBlanc*, 465 Mich at 578.

## I. FAILURE TO CHALLENGE LINEUP IDENTIFICATION

Defense counsel's decision whether to move for suppression of identification testimony is a matter of trial strategy not generally disturbed on appeal. *People v Carr*, 141 Mich App 442, 452; 367 NW2d 407 (1985). A lineup may deny a defendant's due process rights if it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998); *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). The test is whether, in light of the total circumstances, the lineup procedure was so impermissibly suggestive that it rendered the witness's identification irreparably unreliable. *People v Kurylczyk*, 443 Mich 289, 306, 311-312 (Griffin, J.), 318 (Boyle, J.); 505 NW2d 528 (1993).

Physical differences between the defendant and other lineup participants "'are significant only to the extent that they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up.'" *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013), quoting *Kurylczyk*, 443 Mich at 311-312. Distinctions among the lineup participants generally relate only to the *weight* of the identification, rather than its *admissibility*. *Hornsby*, 251 Mich at 466. Russell described defendant to police as a light-skinned black male, 5'9" or 5'10," approximately 20 years of age, and weighing 160 pounds. Police assembled the lineup participants based on this description and based on defendant's actual age, which was 31. Defendant cites several differences between himself[1] and the other lineup participants: one weighed 19 pounds less than defendant, another weighed 40 pounds more; one participant was 6'1"; three of the participants were 20, 23, and 25 years old; and Russell believed defendant was

---

[1] Defendant's actual height was 5'10", and his weight was 165 pounds.

the only light-skinned participant. However, police are not required "to search for 'twin-like' individuals" in assembling a lineup that meets constitutional standards. *McDade*, 301 Mich App at 358. As our Supreme Court stated in *Kurylczyk*:

> [I]n *People v Holmes*, 132 Mich App 730, 746; 349 NW2d 230 (1984), where the defendant was the second tallest participant in the lineup and heavier than others, the lineup was not impermissibly suggestive because the defendant's appearance was substantially similar to that of the other participants. In *People v Horton*, 98 Mich App 62, 67-68; 296 NW2d 184 (1980), the lineup was not impermissibly suggestive despite the alleged age and height differences between the defendant and the other participants and despite the fact that the defendant was the only participant with a visibly scarred face. A lineup in which the defendant was the only participant with both a mustache and a goatee was found to be not impermissibly suggestive in *People v Hughes*, 24 Mich App 223; 180 NW2d 66 (1970). [*Kurylczyk*, 443 Mich at 312 (footnote omitted).]

The complained of distinctions here are comparable to the ones mentioned in *Kurylczyk* and did not render the lineup unduly suggestive. All of the participants fell within an age range of 20 to their early 30s; Russell stated that three of the participants were around the carjacker's height; a 40 pound weight difference is likely noticeable, but a 19 pound difference may not be, and defendant does not dispute that the other participants were of a similar weight. Russell's belief that defendant was the only light-skinned participant does not, under the total circumstances, establish that the lineup was impermissibly suggestive. *Horton*, 98 Mich App at 68-68; see also *People v Haisha*, 111 Mich App 165, 171-172; 314 NW2d 465 (1981) (lineup not impermissibly suggestive even though the defendant was the only participant of Arabic descent). Therefore, defense counsel did not render ineffective assistance by failing to request suppression of the lineup identification. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) ("Trial counsel is not required to advocate a meritless position.").[2]

Likewise, because any objection to the lineup identification would have been futile, it necessarily follows that defendant cannot show that the outcome at trial would have been different had counsel placed such an objection because it simply would have been denied.[3]

---

[2] Defense counsel's decision to use the alleged suggestiveness of the lineup to question the accuracy of the identification was, moreover, a legitimate trial strategy. See, e.g., *People v Turner*, 115 Mich App 247, 251-252; 320 NW2d 57 (1982) (noting that the decision of the defendant's counsel to not request suppression of identification testimony allowed counsel to present evidence that the identification was mistaken).

[3] We also reject defendant's argument that, pursuant to *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281(1988), the police acted in bad faith by failing to photograph the lineup (i.e., failing to preserve potentially exculpatory evidence), and therefore "due process required that the line-up be suppressed." Defendant presented no evidence of any bad faith intent on the part of the police.

## II.  FAILURE TO CALL WITNESS

Like the decision to request suppression, decisions regarding whether to present a certain witness are presumptively matters of trial strategy.  *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).  This Court does not substitute its own judgment for counsel's strategic decisions, or assess trial counsel's competency with the benefit of hindsight.  *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).  Failure to call particular witnesses or present particular evidence can constitute ineffective assistance only if it deprives defendant of a substantial defense.  *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012); *Payne*, 285 Mich App at 190.  "A substantial defense is one that might have made a difference in the outcome of a trial."  *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

The trial court did not err in ruling that the failure of defendant's trial counsel to call Dehko as a witness was a reasonable tactical decision.  Dehko, who ran two car repair shops, testified that a light-skinned black man sold him a black 2011 Dodge Charger for cash in the summer of 2012.  Dehko, in turn, claims that he sold the car to defendant in the fall of 2012 and made a profit of $2000.  Dehko admitted that he failed to report his income from the sale to the Internal Revenue Service and that the transfer was illegal because he failed to first record his ownership of the vehicle with the Michigan Secretary of State.

Defendant's trial counsel interviewed Dehko and listed him as a possible witness but did not call him at the time of trial because Dehko could not provide the name of the man who sold him the car.  Defense counsel thought this was suspicious since Dehko allegedly was a "legitimate" businessman.  Further, according to defense counsel, when Dehko was presented with a copy of the title reflecting the fraudulent VIN that defendant had at the time of his arrest, Dehko said that was the document *he received from defendant*.  Defendant, who was present during this conversation, and defense counsel were stunned by this comment.  Defendant then walked out of the room with Dehko, only to have them both return, with Dehko now claiming to defense counsel that he made a mistake.  Evidence admitted at the *Ginther* hearing established that the police and the prosecutor were familiar with Dehko; he had nine aliases and multiple past convictions for receiving and concealing stolen property in connection with his car repair businesses.  Dehko also admitted that he sold defendant the car illegally and never reported his purchase or sale of the car for tax purposes.  Consequently, counsel determined that Dehko was not a credible witness.  Defendant's counsel stated that when he and defendant discussed the issue, defendant agreed that Dehko should not testify for these very reasons.  Under these circumstances, the failure of defendant's trial counsel to call Dehko as a witness was the type of reasonable strategic decision this Court does not second guess on appeal.  *Rockey*, 237 Mich App at 76 ("Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy.").

Defendant also has not demonstrated that Dehko's testimony would have changed the outcome at trial.  As explained, Dehko was not a credible witness.  Even if he did testify, Dehko could not account for the fraudulent VIN sticker.  More importantly though, he offered no proof, aside from his own unsupported assertion, that the car he sold to defendant was actually the same car at issue in this case.  Dehko also testified that the light-skinned man who sold him the car was significantly taller than defendant, undercutting the theory of mistaken identification.  Russell, on the other hand, identified defendant confidently through a proper lineup and at trial.

The jury found Russell's testimony credible despite defense counsel's efforts to play up the suggestiveness issue during cross-examination and in closing argument. It is unlikely that Dehko's testimony would have made a difference in defendant's convictions.

Affirmed.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens