PEOPLE v CURRELLEY

Docket No. 43469. Submitted June 16, 1980, at Detroit.—Decided
     August 25, 1980. Leave to appeal applied for.

     Roy Currelley was convicted of first-degree criminal sexual con-
     duct and second-degree criminal sexual conduct in the Wayne
     Circuit Court, Joseph B. Sullivan, J. The complainant, a five-
     year-old girl, was the only eyewitness and described her at-
     tacker as a six-foot black male, 25 years of age, wearing a blue
     jacket, blue jeans and no shirt. Eighteen days later she saw a
     man she recognized as her assailant. Several days later, defen-
     dant was arrested. An attorney was appointed to represent him
     at pretrial identification procedures. Pursuant to a police re-
     quest, defendant's counsel agreed to the holding of a photo-
     graphic display rather than a corporeal lineup. When complain-
     ant failed to make a positive identification from the photo-
     graphs but stated that she would know her assailant if she saw
     him, a corporeal lineup was held. Complainant immediately
     identified defendant as her attacker. The trial court allowed the
     complainant to identify defendant in court as her attacker.
     Defendant appeals, alleging that the photographic display
     while defendant was in custody was improper and that it
     tainted the subsequent identifications. *Held:*

     1. The avoidance of additional trauma to a child of tender
     years is a compelling reason for holding a photographic display
     in lieu of a corporeal lineup. The procedure was proper, and,
     even if it was impermissible, there was an independent basis
     for the in-court identification.

     2. A corporeal lineup is not unduly suggestive merely because
     a defendant appeared in the clothing he was wearing when
     apprehended where there is no evidence that the identification
     was based on the clothing worn. Nor was the lineup suggestive

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 21 Am Jur 2d, Criminal Law § 368.
     Admissibility of evidence of lineup identification as affected by
     allegedly suggestive lineup procedures. 39 ALR3d 487.
[2] 29 Am Jur 2d, Evidence §§ 371, 372.
[3] 21 Am Jur 2d, Criminal Law § 361.
[5] 58 Am Jur 2d, New Trial § 161.

merely because defendant was the only person to appear both there and in the photographic display or because he appeared in the middle of the lineup.

3. Defendant asserts ineffective assistance of counsel for acquiescing in the photographic display, for failure to object to the holding of the corporeal lineup and for failure to object to the suggestiveness of the lineup. No "serious error" was committed by counsel.

Affirmed.

1. CRIMINAL LAW — LINEUPS — PHOTOGRAPHIC DISPLAYS.

The avoidance of additional trauma to a witness who is a child of tender years is a compelling reason for holding a photographic display in lieu of a corporeal lineup for identification purposes even where the suspected perpetrator is in police custody.

2. CRIMINAL LAW — LINEUPS — IN-COURT IDENTIFICATION.

In-court identification by an eyewitness who has participated in improper pretrial identification procedures must be suppressed unless there is a showing by clear and convincing evidence that the in-court identification was made on some other basis.

3. CRIMINAL LAW — PRETRIAL IDENTIFICATION PROCEDURES — IN-COURT IDENTIFICATIONS.

A corporeal lineup is not unduly suggestive merely because a defendant appeared in the clothing he was wearing when apprehended where there is no evidence that the identification was based on the clothing worn.

4. CRIMINAL LAW — PRETRIAL IDENTIFICATION PROCEDURES — PHOTO-GRAPHIC DISPLAYS — LINEUPS.

The fact that a defendant whose photograph had been shown in a previous photographic display is the only participant in a subsequent lineup does not render the lineup procedure improper.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — SERIOUS MISTAKE — NEW TRIAL.

A court may grant a new trial, despite failure to have preserved the error by timely objection, where the lawyer's mistake is of such serious proportion that it may have been decisive, that is, where, but for the lawyer's mistake, the defendant might not have been convicted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Richard B. Ginsberg,* Assistant State Appellate Defender, for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

N. J. KAUFMAN, P.J. On October 25, 1978, defendant was convicted of one count of criminal sexual conduct, first degree, MCL 750.520b; MSA 28.788(2), and one count of criminal sexual conduct, second degree, MCL 750.520c; MSA 28.788(3), after a nonjury trial in Wayne County Circuit Court. On November 8, 1978, defendant was sentenced to a term of 7-15 years on each count, the sentences to run concurrently. Defendant appeals as of right, GCR 1963, 806(1).

The complainant, a five-year-old girl, claimed that she was sexually assaulted on May 12, 1978. She described her assailant as a six-foot black male, 25 years of age, wearing a blue jacket, blue jeans and no shirt. Eighteen days later, while walking in the neighborhood with her aunt, complainant saw a man she recognized as her assailant. At this point, she hid behind her aunt. She later informed her mother of this encounter and the mother called the police.

Several days later, defendant was arrested. An attorney was appointed to represent him at pretrial identification procedures. Pursuant to a police request, defendant's counsel agreed to the holding of a photographic display rather than a corporeal lineup. When complainant failed to make a posi-

* Circuit judge, sitting on the Court of Appeals by assignment.

tive identification from the photographs but stated that she would know her assailant if she saw him, a corporeal lineup was held. Complainant immediately identified defendant as her attacker.

At trial, defendant moved to suppress complainant's in-court identification of defendant. The motion was based upon the holding of an improper photographic display. The parties agreed to incorporate a hearing on this issue into the prosecution's case in chief. At trial, after hearing testimony concerning the witness's opportunity to observe her assailant during the incident itself, the photographic display and the corporeal lineup, the court allowed the in-court identification based on the street identification and the identification made at the corporeal lineup.

Among the issues raised by defendant on appeal, we feel only one merits our detailed consideration. Defendant contends that the holding of a photographic identification while defendant was in custody was improper and tainted both the subsequent corporeal lineup and the in-court identification. Defendant cites as his authority for this proposition *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). This Court acknowledges that *Anderson* provides the general rule that identification by photograph should not be used where the accused is in custody. However, *Anderson* prefaces this rule with the words, "Subject to certain exceptions". *Id.,* 186. While none of the exceptions explicitly mentioned in *Anderson, supra,* exist[1] in the

---

[1] Among the exceptions for using identification by photograph when the accused is in custody listed in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), are where it is not possible to arrange a proper lineup, where there are insufficient numbers of persons available with the defendant's physical characteristics, where the nature of the case requires immediate identification, where witnesses are at a place far distant from location of an in-custody accused, and where the subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.

case before us, we do not find exclusivity in the listed exceptions and find that there was a legitimate reason to use photographs for identification of an in-custody accused in the instant situation.

This Court does not operate in a vacuum. We have before us the briefs and records, which we have carefully studied. We also sit equipped with our knowledge of the world about us. As we view the circumstances of the instant case, we find a five-year-old child as complainant in a very delicate matter. In order to avoid further trauma to this child, the prosecution preferred to use a photographic identification rather than submit the complainant to the stress of a corporeal lineup. Defendant's attorney agreed to this procedure. However, when the witness failed to select any pictures from the photographic display but stated that she was sure she would know her assailant if she were to see him, the police were forced to resort to the corporeal lineup. At this second procedure, the complainant did, in fact, immediately recognize defendant. We find the avoidance of additional trauma to a child of tender years at least as compelling a reason for resorting to a photographic identification—in lieu of a corporeal lineup—as any of the recognized exceptions of *Anderson, supra.* We, therefore, hold that the photographic identification procedure was proper.

Assuming *arguendo* that the photographic identification was impermissible, we believe that the trial court was correct in holding that there was an independent basis for the subsequent in-court identification. In-court identification by an eyewitness who has participated in improper pretrial procedures must be suppressed unless there is a showing by clear and convincing evidence that the in-court identification was made on some other

basis than the pretrial identification procedure. It is not enough that the eyewitness reiterate her ability to recognize, or certainty of recognition, but facts and circumstances of conditions under which the initial identification was made must be considered. *People v Kachar*, 400 Mich 78; 252 NW2d 807 (1977). When we consider the failure of complainant to identify defendant coupled with her assertion that she would know him if she saw him in a corporeal lineup and her subsequent positive identification of him as well as her identification of him on the street, we find that the standards for an independent basis enunciated in *Kachar*[2] were

[2] The Court in *People v Kachar*, 400 Mich 78, 95-97; 252 NW2d 807 (1977) stated:

"Thus, factors which the court should use in determining whether an independent basis exists should include:

"1. Prior relationship with or knowledge of the defendant.

"2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity *to the alleged* criminal act.

"3. Length of time between the offense and the disputed identification. See *Anderson*, 389 Mich 214, for analysis for the curve of forgetting.

"4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

"5. Any previous proper identification or failure to identify the defendant.

"6. Any identification prior to lineup or showup of another person as defendant.

"7. Still another consideration, not mentioned in *Wade, [United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)], but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim. '*In critical situations* perception will become distorted and any *strong* emotion (as opposed to mildly emotional experiences) will affect not only what and how much we *perceive*, but also will affect our *memory* of what occurred.' 389 Mich 211. (Emphasis in original.)

"Factors such as '*fatigue, nervous exhaustion, alcohol and drugs*', 389 Mich 213 (emphasis in original), and age and intelligence of the witness are obviously relevant. Levine and Tapp, *The Psychology of Criminal Identification: The Gap from* Wade *to* Kirby, 121 U Pa L Rev 1079, 1102-1103 (1973).

"8. Any idiosyncratic or special features of defendant.

"Further, the court should refer to the actual lineup or showup to

sufficiently met. Additionally, we note that among the factors considered relevant in *Kachar* are age and intelligence of a witness. *Kachar, supra,* 96. In view of the facts noted above, we find that the trial court did not err in finding a sufficient independent basis for the in-court identification.

We will briefly discuss two other contentions of error by defendant. First, we find no merit in defendant's contention that the corporeal lineup was unduly suggestive. This issue was not raised by defendant at trial. It is raised on appeal to attack the trial court's consideration of the lineup as an independent basis and to assert ineffective assistance of counsel in failing to raise the issue. The fact that defendant was one of two shirtless men is not sufficient to taint an identification. It is not necessarily impermissibly suggestive when a defendant wears the same clothing in the lineup as he wore when apprehended. *People v Morton,* 77 Mich App 240, 244; 258 NW2d 193 (1977), *People v Jones,* 44 Mich App 633, 637-638; 205 NW2d 611 (1973), *People v Gunter,* 76 Mich App 483; 257 NW2d 133 (1977). *Gunter, supra,* also supports the conclusion that no suggestiveness will be found where there is no record evidence that identification of the defendant depended substantially on the clothing worn at the time of the offense and where the witness had sufficient time to observe the defendant. *Gunter, supra,* 490. In the case at bar, there is no evidence that the assailant's being shirtless at the time of the attack was a substantial part of complainant's identification.

Defendant further contends that the fact that

determine whether the witness's testimony that the identification was due to perceptions received at the time of the alleged offenses is credible in view of the witness's performance at, and the conduct of, the disputed lineup or showup." (Footnote omitted.)

defendant was the only individual to appear both in the photographic display and the lineup made the lineup suggestive. The fact that a defendant whose photograph had been shown in a previous photographic show-up is the only participant in a subsequent lineup does not render the lineup procedure improper. *People v Solomon,* 82 Mich App 502; 266 NW2d 453 (1978).

Other objections by defendant concerning defendant's relative height and his location in the middle of the lineup do not represent the kind of disparity that would make the lineup impermissibly suggestive.

Another ground for error raised by defendant is his contention that he was denied effective assistance of counsel. Defendant contends that counsel's acquiescence to a photographic identification without first consulting defendant constituted ineffective assistance of counsel. We feel that counsel's failure to object to this procedure was entirely reasonable in light of the age of complainant and the probable trauma to her. Defendant also asserts that counsel's failure to object to the subsequent corporeal lineup was error and rendered his assistance ineffective. As to this allegation, it seems that defense counsel's failure to object at this point, especially when complainant had failed to make a positive identification at the photographic showup, was good trial strategy, rather than ineffective assistance of counsel. That this strategy backfired at the later corporeal lineup does not render counsel's actions unsupportable. Defendant further cites counsel's failure to object to the alleged suggestive corporeal lineup as ineffective assistance of counsel. As we have previously stated, we do not find that lineup suggestive and thus counsel's failure to object to same was justi-

fied. To all defendant's other contentions of ineffective assistance of counsel, we hold that the test enunciated in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977), which rejected the "sham" test and adopted the standard of *Beasley v United States,* 491 F2d 687 (CA 6, 1974), for effective assistance of counsel has been met.

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests * * *." *Garcia, supra,* 264.

The Court in *Garcia* also accepted the "serious error" test as set forth in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969):

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection grant a new trial." *Id.,* 716.

In the case at bar, we find that defense counsel fulfilled the standards of *Garcia* and that there was sufficient evidence against defendant, so that no "serious error" was committed in any omission by counsel.

We affirm defendant's conviction.