# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAWRENCE THOMAS,

Defendant-Appellant.

UNPUBLISHED
January 26, 2017

No. 328534
Wayne Circuit Court
LC No. 14-008684-01-FC

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

A jury convicted defendant, Lawrence Thomas, of first-degree felony murder, MCL 750.316(1)(b), two counts of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, escape from lawful custody, MCL 750.197a, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to life imprisonment for the felony-murder conviction, and concurrent prison terms of 25 to 40 years for each assault with intent to commit murder conviction, two to five years for the felon-in-possession conviction, and one year for the escape from lawful custody conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant's convictions arise from a shooting incident during the early morning hours of August 17, 2014, at Chevelles Bar & Grill ("Chevelles") on the west side of Detroit. At closing time, after the bar's lights were turned on signaling that it was time to leave, Kenneth Davis and his friends began to make their way toward the entrance. According to witnesses at trial, defendant grabbed Davis's designer glasses off his face. Defendant then produced a gun and fired into the crowd. Davis was grazed by a bullet. Jessica Porter was fatally shot in the head. Latris Rucker was also shot, but recovered from his injury.

The defense theory at trial was that defendant was misidentified as the shooter. Neither Davis nor the Chevelles bartender, Chaloea Smith, were able to identify defendant in a photographic lineup, but they both identified defendant as the shooter at a subsequent corporal lineup and at trial.

-1-

## I. ADMISSION OF IDENTIFICATION TESTIMONY

Defendant argues that the trial court erred in denying his motion to suppress Davis's and Smith's identification testimony. Defendant notes that Davis and Smith both failed to identify him as the shooter in six-person photographic arrays, but that Smith identified him in a crowd photo that was taken during the event at Chevelles, and that Smith and Davis both subsequently identified him as the shooter at corporeal lineups. Defendant does not dispute that he was at the club on the night of the shooting, nor did he seek to suppress Smith's identification of him in the crowd photographs. Rather, defendant argues that the corporeal lineups were impermissibly suggestive identification procedures because he was the only person in the lineups whose photo was included in the photo arrays that were previously viewed by Davis and Smith. Defendant also contends that the lineups were impermissibly suggestive because the Chicago Bulls jersey that he was wearing during the lineups linked him to the shooter, who was wearing a Chicago Bulls baseball cap inside Chevelles. The trial court denied defendant's motion to suppress after conducting a *Wade*[1] hearing. We affirm.

We review for clear error a trial court's decision on a motion to suppress identification evidence, but review any underlying legal issues de novo. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993); *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law." *People v Hornsby,* 251 Mich App 462, 466; 650 NW2d 700 (2002). To successfully challenge an eyewitness identification on due process grounds, a criminal defendant " 'must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.' " *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001), quoting *Kurylczyk,* 443 Mich at 302. "If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

As this Court has stated on more than one occasion, "[t]he fact that a defendant whose photograph had been shown in a previous photographic show-up is the only participant in a subsequent lineup does not render the lineup procedure improper." *People v Currelley*, 99 Mich App 561, 568; 297 NW2d 924 (1980); see also *People v Solomon*, 82 Mich App 502, 507; 266 NW2d 453 (1978). Smith indicated that she based her identification of defendant at the corporeal lineup on having seen him at the club on the night of the shooting. She testified that she clearly saw his profile while he was exiting the bar and shooting into the air, and that she recognized him as he exited the bar because she saw him full in the face earlier in the evening. Likewise, Davis stressed that he recognized defendant in the lineup because he had looked him "dead in the eyes" as defendant grabbed his glasses. Both witnesses testified at the preliminary

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

examination[2] that they did not see defendant's photograph among those shown them by Officer Holmes. Given Smith's and Davis's testimony that they identified defendant in the corporeal lineup based on their observation of him at Chevelles, and their insistence that they did not recognize him in the photographic array, defendant has no basis for contending that the prior photographic array influenced the identification witnesses.

We have also held that it is not necessarily impermissibly suggestive when an accused wears the same clothing in a lineup as he or she wore when apprehended, *Currelley*, 99 Mich App at 567, even when the defendant was apprehended shortly after the crime and is wearing the same clothes in the lineup that he wore when he committed the crime, *People v Morton*, 77 Mich App 240, 243-244; 258 NW2d 193 (1977). Wearing the same clothes at arrest and at a subsequent lineup "will not vitiate the lineup, even where the clothing serves to draw attention away from other lineup participants." *People v Jones*, 44 Mich App 633, 637; 205 NW2d 611 (1973) (lineup not impermissibly suggestive where one of two perpetrators wore a green T-shirt during commission of the crime and defendant wore a green T-shirt at the lineup). To show a deprivation of due process, the defendant must show that the characteristic feature or clothing that distinguished defendant from other members of the lineup was significant to the witness making the identification. *People v* See *Holmes*, 132 Mich App 730, 746; 349 NW2d 230 (1984); see e.g., *People v Hutton*, 21 Mich App 312, 331; 175 NW2d 860 (1970) (the witness said he identified the defendant based on his sandy-colored hair, and the white T-shirt the defendant was wearing when the witness saw him in the police car and at the police station). "[W]here there is no record evidence that identification of the defendant depended substantially on the clothing worn at the time of the offense, and where the witness had sufficient time to observe the defendant[,]" no impermissible suggestiveness will be found. *Currelley*, 99 Mich App at 567, citing *People v Gunter*, 76 Mich App 483; 257 NW2d 133 (1977).

Defendant has failed to show that his wearing a Chicago Bulls jersey in the lineup was a distinguishing feature that was significant to and unduly influenced Smith or Davis. Defendant was wearing the jersey when he was arrested on a parole violation nearly two weeks after the shooting, but he was not wearing it on the night of the shooting. The crowd photos from the bar taken on the night of the shooting depict several persons wearing team baseball caps, including three Chicago Bulls caps. Smith said at the preliminary examination that defendant was wearing a red and black cap, but she identified it by its colors, and not specifically by its team affiliation. Davis agreed at the preliminary examination that defendant had on a red Chicago Bulls hat at the club and a Chicago Bulls jersey at the lineup, but said that he could not remember if the jersey defendant wore during the lineup was red because he "wasn't really paying attention to his clothes; [he] was really paying attention to his face." At the corporeal lineup, both Smith and Davis identified defendant by his number, only afterwards clarifying their pick by referencing the Chicago Bulls jersey that defendant was wearing.

---

[2] The preliminary examination transcript was admitted into evidence at the *Wade* hearing.

"The fairness of an identification procedure is evaluated in light of the totality of the circumstances." *People v Davis*, 146 Mich App 537, 548; 381 NW2d 759 (1985). Some of the factors courts look at when determining the likelihood of misidentification include,

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*Kurylczyk*, 443 Mich at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375, 380; 34 L Ed 2d 401 (1972).]

Analyzing the relevant factors in this case, we conclude that the trial court did not err in denying defendant's motion to suppress the lineup identification. As we indicated above, Smith testified at the preliminary examination that, although she did not see defendant take Davis's glasses and shoot the victims, she clearly saw his profile while he was exiting the bar and shooting into the air, and she recognized him from having seen him full-face earlier in the evening. Davis said defendant looked him in the eye as he took Davis's glasses off his face. Asked if he and defendant were face-to-face, Davis reiterated that he looked defendant "dead in the eyes." The lights in the bar and grille were on at the time of the incident, making it less likely that the witnesses' vision would be impaired by dimness. That the circumstances of defendant's actions captured the attention of both Smith and Davis can hardly be doubted. The witnesses' description of defendant comported with his appearance in crowd photos, and they identified defendant at the corporeal lineup immediately and confidently, as is indicated by the *Wade* hearing testimony of the show-up attorney who was present at both corporeal lineups. Finally, the witnesses identified defendant as the shooter within two weeks of the incident, a relatively short span of time between the shooting and the lineup. See *Kurylczyk*, 443 Mich at 308 n 13 (observing that "[c]ourts have held that delays as long as eighteen months after a crime do not invalidate an eyewitness identification"). Based on the foregoing, we conclude that the opportunities afforded the witnesses to view the shooter, the attention the shooter drew to himself, the accuracy of the witnesses' descriptions of the shooter, and the confidence with which the witnesses identified defendant as the shooter provided sufficient indicia of reliability to deny defendant's motion to suppress the witnesses' identification of him at the corporeal lineup.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for failing to interview other witnesses from Chevelles Bar & Grill, and failing to investigate potential weaknesses in the prosecution witnesses' testimony. Because defendant did not raise this issue in a motion for a new trial or request for a *Ginther*[3] hearing, and this Court denied defendant's motion to remand,[4] our review

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v Lawrence Thomas*, unpublished order of the Court of Appeals, entered September 2, 2016 (Docket No. 328534).

is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish ineffective assistance of counsel, defendant must demonstrate "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas,* 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). Further, "[b]ecause the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy," and this Court "will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *Id*. at 589. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant maintains that Davis was not telling the whole truth. He argues that defense counsel deprived him of a substantial defense by failing to investigate Davis's story and background. Defendant argues that counsel could have more effectively impeached Davis's testimony if counsel had conducted a thorough investigation, including by verifying Davis's statement that he was stopped by police after purposefully speeding, and that the police summoned an ambulance for him. Defendant also contends that counsel should have interviewed other witnesses, including persons known as Dwight and Aaron, and the mother of Lataris Rucker, whom Davis tried to contact to inform her that Rucker had been shot. In addition, defendant argues that a more thorough impeachment of Davis, combined with "the weak nature" of the testimony by prosecution witness Marquis Lambert, would have provided an effective defense. Further, defendant argues that trial counsel was ineffective for failing to investigate other witnesses, referring to statements that officers gathered at Chevelles and passed on to the officer in charge.

Defendant has failed to establish the factual predicate for his claim and to overcome the presumption that defense counsel's actions constituted sound trial strategy. Although Davis's credibility was an issue at trial, defendant has failed to provide factual support for his speculative assertion that defense counsel missed opportunities to impeach Davis's testimony. Defendant has not identified any evidence suggesting that police inquiries would have revealed that there was no police report corroborating Davis's testimony about the traffic stop, or that either Rucker's mother, Aaron, or Dwight could have provided information useful to impeaching Davis's testimony. In addition, although Lambert could not identify the shooter, his testimony that the shooter stole Davis's glasses and then fired his weapon was relevant to support the elements of the charged crimes of felony murder and assault with intent to commit murder, and defendant provides no basis for concluding that any additional impeachment of Davis would have been helpful in further undermining Lambert's testimony. Finally, defendant has not provided any offer of proof regarding relevant information to be obtained from interviewing witnesses whose statements were taken at Chevelles. Absent factual support for defendant's claim that further investigation of Davis or of other witnesses would have provided him with a

substantial defense, we cannot conclude that defense counsel's assistance was constitutionally ineffective. *Dunigan*, 299 Mich App at 589.

Defendant also argues that this Court should remand this matter for a *Ginther* hearing. However, without an appropriate offer of proof demonstrating factual support for his claim, defendant is not entitled to an evidentiary hearing.

### III. FELONY-MURDER CONVICTION

Defendant contends that he could not be convicted of felony-murder because he was not charged with or convicted of the predicate offense of larceny. This position is without merit.

Whether a conviction of felony murder is void in the absence of a conviction of the underlying felony is a question of law, which we review de novo on appeal. See *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). Unpreserved issues are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MCL 750.316(1)(b) defines felony murder as "murder committed in the perpetration of, or attempt to perpetrate" any of the enumerated felonies, including "larceny of any kind." The statute does not require that a defendant be charged with or convicted of a predicate offense to be convicted of felony murder. The prosecution alleged that defendant's act of taking Davis's designer glasses was an act of larceny that served as the predicate offense for the felony-murder charge. Although defendant was not separately charged with larceny, "the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor." *People v Venticinque*, 459 Mich 90, 100; 586 NW2d 732 (1998). In *People v Ream*, 481 Mich 223, 225-226; 750 NW2d 536 (2008), our Supreme Court overruled prior caselaw and held that dual convictions for both felony murder and the underlying felony do not violate double jeopardy protections. That decision clearly indicates that felony murder and the underlying offense are separate offenses for purposes of the prosecutor's charging discretion.

Conviction for felony-murder does not require the prosecutor to charge and convict a defendant of one of the predicate felonies enumerated in MCL 750.316(1)(b), but it does require the trial court to instruct the jury on the elements of the underlying felony. See *People v Whetstone*, 131 Mich App 669, 676-677; 346 NW2d 845 (1982). Our review of the record reveals that the third element in the trial court's felony-murder instruction was "that when [defendant] did the act that caused the death of Jessica Porter the defendant was committing or attempting to commit the crime of larceny." We further note that the record shows that the trial court properly instructed the jury on the elements of larceny.

Defendant contends that his conviction was improper because only a felony larceny can serve as the predicate offense for felony murder, and the jury was never instructed that the item

that was allegedly stolen had to have a value of at least $1,000.[5] MCL 750.356(3)(a) (classifying as a felony and identifying the punishment for larceny of property worth more than $1,000 but less than $20,000). However, as MCL 750.316(1)(b) clearly states, felony murder can be established when a person commits "larceny of any kind." Consequently, even misdemeanor larceny is sufficient to support a conviction for felony murder. *Id*. Accordingly, the prosecution was not required to prove the value of Davis's glasses.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, neither of which have merit.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that trial counsel was ineffective for failing to challenge the trial court's personal and subject-matter jurisdiction, and failing to challenge the validity and constitutionality of the first-degree murder statute, MCL 750.316. We disagree.

As Michigan's Supreme Court has pointed out, subject-matter jurisdiction "is the right of the court to exercise jurisdiction over a class of cases, such as criminal cases[,]" and "is presumed unless expressly denied by constitution or statute." *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998) (quotation marks and citation omitted). "In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination, or before whom the defendant had been examined. *Id*. (quotation marks and citation omitted). Further, "[s]tatutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v McDonald*, 201 Mich App 270, 273; 505 NW2d 903 (1993). Defendant cites no constitutional or statutory authority that would call into question the circuit court's subject-matter jurisdiction in this case, and in personam jurisdiction vested in the circuit court subsequent to defendant's preliminary examination on October 6, 2014. Further, defendant has failed to present a legally cognizable argument in support of his claim that Michigan's first-degree murder statute is null and void. Accordingly, defendant has not shown that defense counsel rendered constitutionally ineffective assistance by failing to raise these claims. See *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005) (noting that counsel is not ineffective for failing "to advocate a meritless position").

### B. PROSECUTORIAL MISCONDUCT

Defendant raises claims of prosecutorial misconduct, none of which was preserved with an appropriate objection in the trial court. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Issues of prosecutorial misconduct are reviewed de novo to determine whether the

---

[5] At trial, Davis testified that he was wearing Cartier glasses and that he had paid around $1,300 or $1,400 for them. Defendant argues that this testimony does not establish the value of the glasses at the time of the incident in question.

defendant was denied a fair and impartial trial." *Id.* Claims of prosecutorial misconduct are reviewed on a case-by-case basis, examining the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *Bennett*, 290 Mich App at 475.

Defendant first argues that the prosecutor's hypothetical example explaining how one witness's testimony being sufficient to prove an accused pickpocket's guilt was improper because it provided a false explanation of reasonable doubt. We disagree because the remarks did not refer to reasonable doubt. In any event, the trial court properly instructed the jury on reasonable doubt by giving the instruction in M Crim JI 3.2, the substance of which has been approved by this Court. *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). The court also instructed the jury that it must follow the court's instructions on the law, and must not follow any attorney statements on law that are different than the trial court's instructions. These instructions were sufficient to protect defendant's substantial rights. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant also argues that the prosecutor improperly vouched for his guilt with these statements:

> So after listening to all the testimony in this case and seeing the exhibits in this case it has been proven beyond a reasonable doubt that first; the Defendant was there that night, and second, that he was the shooter who over a pair of glasses took the life of Jessica Porter, shot Mr. Rucker, shot Mr. Davis and then when he was arrested for this offense tried to flee from the police.

A prosecutor may not vouch for a defendant's guilt by using the prestige of his office. See *People v Reed*, 449 Mich 375, 398-399; 535 NW2d 496 (1995). "The crucial inquiry is not whether the prosecutor said 'We know' or 'I know' or 'I believe,' but rather whether the prosecutor was attempting to vouch for the defendant's guilt." *Id.* at 399. The prosecutor's remarks must be read in context and must be "evaluated in light of the relationship or lack of relationship they bear to the evidence admitted at trial." *Id.* (citation and quotation marks omitted). The challenged remarks came at the conclusion of the prosecutor's review of the evidence. Considered in context, the argument was intended to persuade the jury that the evidence proved defendant's guilt. The prosecutor did not urge the jury to find defendant guilty based on the prestige of her office. Therefore, the remarks were not improper.

Lastly, defendant argues that the prosecutor improperly appealed to the jury's sympathy, directing statements toward the jury that were intended to elicit an emotional response. "Appeals to the jury to sympathize with the victim constitute improper argument," but such remarks do not warrant reversal unless they are "so inflammatory as to prejudice defendant." See *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2011).

Defendant does not specify which parts of the prosecutor's closing argument constituted an improper appeal for sympathy. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). By failing to identify any particular

remark as improper, defendant has failed to meet his burden of establishing a plain error. Moreover, we have reviewed the prosecutor's closing remarks and find none that can be characterized as an improper appeal to the jury's sympathy.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad